DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from the judgment issued by the Sandusky County Court of Common Pleas following a jury verdict finding appellant guilty of attempted aggravated arson. Because we conclude that appellant was not prejudiced by any alleged errors by the trial court and did not establish a claim of ineffective assistance of counsel, we affirm.
 {¶ 2} On April 27, 2001, appellant was indicted by the Sandusky County Grand Jury on three counts: aggravated arson, in violation of R.C. 2909.02(A)(1); kidnaping, in violation of R.C. 2905.01(A)(3); and abduction, in violation of R.C. 2905.02(A)(1) and/or (2). The charges stemmed from incidents occurring on April 13, 2001, at the residence shared by appellant, his wife, Julie Burkey, and their daughter. Appellant pled not guilty and the case proceeded to jury trial. Just prior to trial, the state moved to amend the indictment, requesting a change in the names of the victim from "Julie Burkey" to "any person who was present at 206 Bridge Street, Woodville, Sandusky County, Ohio on April 13, 2001 and engaged in efforts to prevent an explosion, including but not limited to Todd Smith and emergency personnel." The court ultimately granted the motion to amend the indictment as to the victims listed. However, the court also added that "Count One of the indictment be amended to Attempted Aggravated Arson."
 {¶ 3} At trial, Julie Burkey testified to the following facts. On April 13, 2001, she picked up the couple's daughter after work and arrived at her home at approximately 4:15 p.m. When she entered the residence, all the lights were off and appellant was sitting in the bathroom. When appellant told her he was drunk, she asked him to leave the house. Appellant, distraught and crying, began to gather his clothing from the bedroom, but stopped to telephone his aunt. Fearing appellant's reaction to her request to leave, Mrs. Burkey said that she did not want their daughter in the house while he was moving out. Mrs. Burkey then called her mother, Carolyn Smith, who lived minutes away. Mrs. Smith came, picked up the couple's daughter, and left.
 {¶ 4} According to Mrs. Burkey, appellant became more agitated and hostile. At one point, he ripped the phone line from the wall, then later re-plugged the cord and permitted Mrs. Burkey to phone her mother using the speaker phone function. After asking about the couple's daughter, Mrs. Burkey yelled to her mother to have her stepfather, Todd Smith, come to the house.
 {¶ 5} Appellant immediately hung up the phone and again ripped the cord from the wall plug. Appellant then ran to the front door, locked both locks, and opened the valves on two acetylene tanks which were located by the front door. He next ran to the kitchen and turned on the burners of the electric stove. Mrs. Burkey said that appellant had in his pocket a butane lighter of the type commonly used to light grills or candles.
 {¶ 6} Mrs. Burkey then unlocked the front door and left the house. Appellant followed her and attempted to pull her back into the residence. Mrs. Burkey resisted, holding onto a porch post and appellant then ran back into the home. Mr. and Mrs. Smith and Mrs. Burkey's daughter arrived at the house within minutes of her phone call. Mrs. Burkey, the child, and Mr. Smith went to a neighbor's home to call police while Mrs. Smith began pounding on the front door of the Burkey home.
 {¶ 7} Mrs. Smith then provided the following testimony. After arriving at the home, she could see appellant in the house through a front window. She continued to pound on the front door, trying to get appellant to open it. Mrs. Smith entered the house through an open back door and smelled "something burning" and the odor of gas so strong that it made her sick. She turned off the stove burners, opened the front door to air out the house, and called to her daughter to call the fire department. She also noticed that a waterline in the utility room had been broken, allowing water to gush into the home. The natural gas line to the water heater was also broken. Mr. Smith located a shutoff valve and turned off the water. Mrs. Smith noted that, at some point prior to this, appellant had left the home.
 {¶ 8} Todd Smith then testified that after he entered the Burkey home, he turned off the water valve and unplugged the washing
 {¶ 9} machine and stove. He found the covers for the stove burners on the floor. The covers were still warm and looked burnt. He could smell and see smoke in the kitchen. He also smelled natural gas fumes and saw that the gas line to the water heater in the utility room was broken. He observed two black scuff marks on the wall behind the area where the gas line was broken.
 {¶ 10} Roy Whitehead, Police Chief for the Woodville Police Department, then testified that on the date of the incident, he was a senior patrolman. He responded to the call to the Burkey home. He corroborated that the house smelled strongly of smoke and natural gas and that smoke appeared to be coming from the kitchen. He also observed that the water pipe and gas line to the hot water tank had been damaged and that the burner covers were burnt and on the kitchen floor. Chief Whitehead checked to make sure appellant was not in the house and then gave a description of appellant to the State Fire Marshall's office and to Gibsonburg Police Department, a town located approximately five miles from Woodville.
 {¶ 11} A Gibsonburg police officer soon notified the Woodville Police Department that from the broadcast description, they had located appellant. After a foot pursuit, he was apprehended in a residential yard and was arrested. Appellant continued to scream profanity and banged his head on the window of the cruiser. He threatened to commit suicide, telling police officers to shoot him. Police found a butane grill-type lighter in his pocket when he was taken into custody. He was transported to the local hospital emergency room for examination and evaluation. Appellant was then transported and incarcerated.
 {¶ 12} Fire department personnel arrived and shut off the main gas into the home. Keith Loreno, Deputy State fire Marshall, testified that he inspected the Burkey residence on the date of the incident. He took photos of the home to document and evaluate the evidence at the scene. Loreno considered the evidence of the gas leak in the hot water tank line, that witnesses smelled a strong odor of gas, and that the stove burners had been hot enough to burn through the burner covers. He stated that with this combination there was " a strong potential there for a fire and explosion." He stated that, contrary to popular belief, an open flame is not required to ignite natural gas. Loreno opined that the burners on the stove in the Burkey home could have reached a sufficiently high temperature to ignite the escaping gas; had the gases been allowed to build up, an explosion could have occurred. According to Loreno, an explosion could even have been caused by flicking on a light switch, unplugging an appliance, or by the pilot from the hot water tank. The build-up of gas had been interrupted by the Smiths entering and opening the doors to the home, allowing the gas to escape. The state then rested.
 {¶ 13} Appellant then testified to the following facts. On the day of the incident, he was drunk when his wife came home from work. They argued about issues concerning their marriage and her desire for a divorce. He denied deliberately damaging the gas lines, stating that he fell in the utility room which may have caused the pipes to break. Appellant also denied opening the valves to the acetylene tanks or turning on the stove burners. He further denied attempting to drag his wife back into the home or threatening to blow up the house. Appellant did acknowledge that he asked the police who apprehended him to shoot him. He stated that he was upset about his marriage ending.
 {¶ 14} The jury found appellant guilty of attempted aggravated arson, and not guilty as to the other two charges. The court imposed a sentence of two years incarceration, with up to three years of post-release control. Appellant now appeals from that judgment, setting forth the following four assignments of error:
 {¶ 15} "Assignment of Error No. 1
 {¶ 16} "The Trial Court committed reversible error when it instructed the jury on the offense of attempted aggravated arson.
 {¶ 17} "Assignment of Error No. 2
 {¶ 18} "The Trial Court committed reversible error by amending Count One of the Indictment to charge the offense of Attempted Aggravated Arson.
 {¶ 19} "Assignment of Error No. 3
 {¶ 20} "Appellant did not receive effective assistance of counsel.
 {¶ 21} "Assignment of Error No. 4
 {¶ 22} "The Trial Court committed reversible error when [it] failed to provide the Appellant a meaningful right of allocution."
 I. {¶ 23} We will address appellant's first two assignments together. Appellant argues that the trial court erred in permitting the indictment to be amended to the charge of attempted aggravated arson and improperly instructed the jury as to both aggravated arson and attempted aggravated arson.
 {¶ 24} We first note that an appellate court need not consider an error which could have been addressed or corrected if it had been called to the attention of the trial court but was not. State v. William
(1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other grounds. In this case, neither of the above alleged errors were objected to at trial. Thus, in order to consider these issues, we must examine them under the doctrine of "plain error." Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Crim. R. 52(B); See Statev. Underwood (1983), 3 Ohio St.3d 12, 14; State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 25} A defendant may be found guilty of a lesser included offense even if the lesser offense is not included in the indictment.White v. Maxwell (1963), 174 Ohio St. 186, 188; R.C. 2945.74. Furthermore, an instruction on a lesser-included offense is required when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. "If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given." State v. Wilkins (1980),64 Ohio St.2d 382, 388.
 {¶ 26} R.C. 2909.02 (A)(1)provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender * * *." Attempted aggravated arson is a lesser included offense of aggravated arson. See State v. Russell (October. 20, 2000), Montgomery App. Nos. 18155 18194; State v. Estrada (September. 18, 1998), Sandusky App. No. S-98-006. The only criterion lacking from an attempted offense is that the accused was not successful in the completion of the underlying offense. Russell, supra.
 {¶ 27} In this case, the state only sought to amend the indictment as to the victims named. Despite the court's judgment entry granting an amendment of the indictment to "Attempted Aggravated Arson" as well as the change in victims, the name of the underlying offense remained the same. Moreover, jury instructions for both aggravated arson and the lesser included offense of attempt were appropriately given. As a result, appellant was convicted only of the lesser charge of attempted aggravated arson, which was supported by the record. Therefore, we cannot say that any alleged error was committed which would have clearly changed the outcome of the trial.
 {¶ 28} Accordingly, appellant's first and second assignments of error are not well-taken.
 II. {¶ 29} We will next address appellant's fourth assignment of error, in which he claims that the trial court did not afford him a meaningful right of allocution.
 {¶ 30} Crim. R. 32(A)(1) provides that before imposing sentence in a criminal trial, the trial court shall "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The provisions of Crim. R. 32(A)(1) are mandatory in both capital and noncapital cases, absent invited error or harmless error. State v. Campbell (2000),90 Ohio St.3d 320, paragraph two of the syllabus. "Trial courts must painstakingly adhere to Crim. R. 32, guaranteeing the right of allocution. A Crim. R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." Statev. Green, 90 Ohio St.3d 352, 359-360, 2000 Ohio 182.
 {¶ 31} In this case, both appellant and his counsel were addressed personally by the court and given the opportunity to speak pursuant to Crim. R. 32(A)(1). Although appellant's comment was short, his counsel presented a lengthy statement on his behalf. Therefore, the trial court complied with Crim. R. 32(A)(1) and appellant's right of allocution was not violated.
 {¶ 32} Accordingly, appellant's fourth assignment of error is not well-taken.
 III. {¶ 33} Appellant, in his third assignment of error, contends that he was not provided with effective assistance of counsel.
 {¶ 34} In order to prove ineffective assistance of counsel, a defendant must show 1) that defense counsel's representation fell below an objective standard of reasonableness and 2) that counsel's deficient representation was prejudicial to defendant's case. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See alsoStrickland v. Washington (1984), 466 U.S. 668, 694.
 {¶ 35} In this case, in light of our disposition of appellant's other three assignments of error and a complete review of the record, we cannot say that trial counsel's representation fell below the minimum standards of reasonableness. Therefore, appellant has failed to establish that trial counsel's assistance was ineffective.
 {¶ 36} Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 37} The judgment of the Sandusky County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Arlene Singer,J., CONCUR.